# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| REBECCA ROE, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILDREN, ABC AND DEF | CIVIL ACTION NO. 3:23-cv-1279 |
| | JUDGE DOUGHTY |
| VERSUS | |
| JOHNATHAN RANDALL LOWERY, ET AL | MAGISTRATE JUDGE MCCLUSKY |

## FIRST AMENDED COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes the plaintiff, Rebecca Roe, individually and on behalf of her minor children, ABC and DEF, who amends the entire body and prayer of the *Petition for Declaratory Judgment and for Damages* [Doc. 1-1, pp. 2-36] filed herein and replaces it with the following:

"The *Complaint* of Rebecca Roe, a person of the full age of majority, domiciled and residing in the Parish of Lincoln, State of Louisiana, respectfully represents that:

1.

Plaintiff, Rebecca Roe ("Ms. Roe"), is a person of the full age of majority, who is domiciled and resides in the Parish of Lincoln, State of Louisiana.

2.

Ms. Roe is a pseudonym for the actual name of the plaintiff and is being used in accordance with La. R.S. 46:1844(W) to protect the identity of Ms. Roe.

3.

Ms. Roe brings this action individually, and on behalf of her minor children, ABC and DEF, who also reside and are domiciled in the Parish of Lincoln, State of Louisiana. ABC and

DEF are pseudonyms for the actual names of Ms. Roe's children and are being used in accordance with La. R.S. 46:1844(W) to protect the identities of ABC and DEF.

4.

Made Defendants herein are:

a.    Johnathan Randall Lowery, also known as Johnathan R. Lowery, also known as Randy Lowery ("Lowery"), is a person of the full age of majority, who is domiciled and resides in the State of Alabama.

b.    Movement Mortgage, LLC ("Movement") is a limited liability company organized and existing pursuant to the laws of the State of Delaware whose principal place of business is in the State of South Carolina. The members of Movement are Abram's Promise, Inc. and Harris Covenant, Inc. Abram's Promise, Inc. is a corporation organized and existing pursuant to the laws of the State of North Carolina whose principal place of business is in the State of South Carolina. Harris Covenant, Inc. is a corporation organized and existing pursuant to the laws of the State of Virginia whose principal place of business is in the State of Virginia.

c.    Westchester Fire Insurance Company ("Westchester") is a corporation organized and existing pursuant to the laws of the State of Pennsylvania whose principal place of business is in the State of Pennsylvania.

5.

Movement and Westchester are authorized to conduct business, and actually conduct business, in the State of Louisiana.

6.

There is complete diversity of citizenship between all Plaintiffs and all Defendants.

7.

This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000 with respect to each Plaintiff, exclusive of interest and costs, and is between citizens of different States.

8.

Venue is proper in this district and division pursuant to 28 U.S.C. §98 and 28 U.S.C. §1391(b).

**FACTUAL BACKGROUND**

9.

Movement (which at the time was known as New American Mortgage, LLC) was founded in 2008 by Casey Crawford and Toby Harris.

10.

Movement is a direct-to-consumer mortgage lender with an annual loan volume of approximately $30,000,000,000.

11.

Movement has loan officers in more than 775 locations nationwide.

12.

Movement has loan officers located in 49 states and the ability to service loans in all 50 states.

13.

Movement has more than 4,500 employees in the United States.

14.

Movement's stated mission is "to love and value people in everything [it does]."

15.

In a survey conducted in 2018 by mPower, the Mortgage Bankers Association's professional networking group for women, more than 70% of the women in the mortgage industry reported that they had been sexually harassed at work at least once.

16.

Movement knew, or in the exercise of reasonable diligence should have known, of the results of the survey set forth in the preceding paragraph.

17.

At all times relevant hereto, Movement's *Employee Handbook* prohibited sexual harassment, including unwelcome sexual advances, requests for sexual favors, and verbal or physical conduct of a sexual nature even if the conduct is welcome by the victim of the harassment.

18.

At all times relevant hereto, Movement's *Employee Handbook* provided the following non-exclusive list of behaviors that were prohibited under its sexual harassment policy:

a.      sexually oriented comments and innuendoes;

b.      inappropriately commenting about a person's body;

c.      physical contact that is not welcome;

d.      unwelcome sexual flirtations and propositions;

e.      demands for sexual favors; and

f.      a supervisor offering employment benefits in exchange for sexual favors.

19.

Ms. Roe had a reasonable expectation based upon Movement's *Employee Handbook* that Movement would protect her and its other employees from the prohibited sexually harassing behaviors described in the foregoing paragraphs of this Complaint.

20.

Ms. Roe reasonably relied upon the assurances of Movement in its *Employee Handbook* that it would protect her and its other employees from the prohibited sexually harassing behaviors described in the foregoing paragraphs of this Complaint.

21.

Ms. Roe went to work for Movement in November of 2018 as an Outside Loan Officer.

22.

Upon accepting employment with Movement, Ms. Roe was required to sign a document entitled *Movement Mortgage Outside Loan Officer Employment Agreement*.

23.

Ms. Roe signed the *Movement Mortgage Outside Loan Officer Employment Agreement* on January 8, 2019.

24.

Section II of the *Movement Mortgage Outside Loan Officer Employment Agreement* provides that Ms. Roe's "primary duties shall be to solicit, originate, process and facilitate the closing and post-closing of residential mortgage loans for and on the [Movement's] behalf."

25.

Section II of the *Movement Mortgage Outside Loan Officer Employment Agreement* required Ms. Roe, in performing her primary duties, to be customarily engaged away from

Movement's office and to "spend a majority of work time each work week away from the [Movement's] office or other place of business…."

26.

Ms. Roe was expected, pursuant to the *Movement Mortgage Outside Loan Officer Employment Agreement*, to regularly "meet and call on clients, referral sources, realtors, and business prospects at their homes and places of employment or in other social settings away from any fixed location or Company office."

27.

Movement sponsored frequent events for realtors and others, that Ms. Roe was expected to attend, where alcoholic beverages were served to, and consumed by, Movement employees and supervisory personnel and paid for by Movement.

28.

Movement knew that the consumption of alcoholic beverages at the events that it sponsored could be disruptive, adversely affect the quality of work and performance of its employees, pose serious risks to both the persons consuming the alcohol and others, have a negative impact on morale, and affect the judgment and behavior of those consuming alcoholic beverages.

29.

Despite its knowledge concerning the deleterious effects that the consumption of alcohol at the events that its sponsored could have on its employees and others, Movement encouraged the sponsoring and holding of those events.

30.

Lowery is over six feet tall and weighs over 220 pounds.

31.

Prior to June 2021, Lowery was employed by CIS Financial Services, Inc.

32.

During Lowery's employment with CIS Financial Services, Inc., various allegations were made that he engaged in sexually harassing behavior of his co-employees and subordinates.

33.

In June 2021, Lowery left his employment at CIS Financial Services, Inc. to accept a position with Movement as Market Leader, Southeast Region.

34.

Prior to hiring Lowery in June of 2021, Movement failed to ask Lowery whether he engaged in any sexually harassing behavior while employed at CIS Financial Services, Inc. or undertake any investigation with respect to such behavior.

35.

In his position as Movement's Market Leader for the Southeast Region, Lowery had the following duties and responsibilities:

a.    Complying with each and every term and condition of his employment contract with Movement;

b.    Complying with each and every requirement of Movement's *Employee Handbook*;

c.    Travelling to Movement's offices in the Southeast Region;

d.    Authorizing access to Movement's offices in the Southeast Region;

e.    Distributing keys to Movement's offices in the Southeast Region;

f.    Approving the expenditure of funds for events sponsored by Movement in the Southeast Region;

g.   Hosting Movement sponsored events with loan officers such as Ms. Roe in the Southeast Region;

h.   Meeting with loan officers, such as Ms. Roe, concerning all aspects of their employment with Movement;

i.   Supervising the work of loan officers, such as Ms. Roe, concerning all aspects of their employment with Movement;

j.   Providing guidance on loan products and guidelines;

k.   Approving the interest rates and lender rate subsidy for mortgages sold to customers by loan officers in the Southeast Region, including Ms. Roe;

l.   Travelling to Movement's home office;

m.   Interacting with Movement home office personnel concerning the underwriting and processing of loans by the employees that he supervised; and

n.   Such other duties and responsibilities as may be discovered through discovery.

36.

Each of the foregoing duties and responsibilities were to be undertaken by Lowery during the course and scope of his employment with Movement.

37.

Movement either failed to supervise, or failed to properly supervise, the work of Lowery.

38.

Movement's failure to supervise, or properly supervise, the work of Lowery was a tacit authorization by Movement for Lowery to use his position of authority to sexually harass his subordinates and other employees of Movement.

39.

For example, Lowery's sexually harassing behavior of female employees in the loan processing department at Movement's home office was so prevalent and pervasive that the

manager of that department refused to permit employees from that department from interacting with Lowery.

40.

Despite the manager of Movement's loan processing department knowing of Lowery's sexually harassing conduct directed at her subordinates, she either failed to report Lowery's conduct to her superiors, or reported his conduct and no action was taken by Movement with respect to that conduct.

41.

After Lowery's employment at Movement as Ms. Roe's supervisor, he regularly and persistently harassed Ms. Roe in a manner that was so severe and pervasive that it altered the terms and conditions of Ms. Roe's employment with Movement by:

a.    directing sexually oriented comments and innuendoes to Ms. Roe both in person and by text message;

b.    inappropriately commenting about Ms. Roe's body both in person and by text message;

c.    making unwelcome physical contact with Ms. Roe;

d.    making unwelcome sexual flirtations and propositions to Ms. Roe in person and by text message;

e.    making demands upon Ms. Roe for sexual favors; and

f.    offering Ms. Roe employment benefits in exchange for sexual favors.

42.

For example, Lowery's sexual harassment of Ms. Roe was so bad that, in advance of a Movement business meeting to be held in Tupelo, Mississippi in January of 2022, Ms. Roe requested that another supervisory employee of Movement, Jenn Eastman, allow Ms. Roe to stay in Ms. Eastman's hotel room so that Lowery would not harass her.

43.

Lowery's sexual harassment of Ms. Roe during a prior Movement business trip to Birmingham, AL in December of 2021 was so extreme, that Ms. Roe was required to request to stay in Ms. Eastman's hotel room so that she was protected from Lowery's harassment.

44.

Ms. Roe told Ms. Eastman of Lowery's sexually harassing behavior she had been enduring at the hand of Lowery in January of 2022.

45.

In addition, Ms. Eastman had received reports and was knowledgeable of the fact that Lowery was sexually harassing employees of Movement in addition to Ms. Roe.

46.

Despite Ms. Eastman's knowledge of Lowery's sexually harassing conduct directed at Ms. Roe, Ms. Eastman either failed to report Lowery's conduct to her superiors, or reported his conduct and no action was taken by Movement with respect to that conduct.

47.

In her capacity as an Outside Loan Officer for Movement, Ms. Roe did not have "regular" working hours and was frequently required to perform services for Movement during the day, in the evenings, on weekends, and even when she was on vacation.

48.

While Ms. Roe attempted, to the best of her ability, to avoid conducting business on behalf of Movement from her home, from time-to-time she was required to conduct business for Movement from her home.

49.

On September 20, 2022, Lowery was in Monroe, Louisiana for a Movement event.

50.

Ms. Roe was required to, and did, attend the September 20, 2023 Movement event.

51.

The September 20, 2022 event was sponsored and paid for by Movement.

52.

Alcohol was served and consumed at the September 20, 2022 Movement event.

53.

Despite Movement's knowledge that the consumption of alcoholic beverages at the events that it sponsored could pose serious risks to its employees and affect the judgment and behavior of those consuming alcoholic beverages, it allowed Lowery to both purchase and consume an excessive amount of alcohol at the September 20, 2022 Movement event without any supervision or restraint.

54.

At the conclusion of the September 20, 2022 event, Ms. Roe went to her home located in Lincoln Parish, Louisiana intending to be alone.

55.

Following her departure from the Movement event on September 20, 2022, Ms. Roe received numerous text messages and telephone calls from her supervisor, Lowery, requesting to come to Ms. Roe's home to discuss work-related issues.

56.

Ms. Roe initially refused to provide her address to Lowery.

57.

After being persistently pestered by Lowery on the evening of September 20, 2022, Ms. Roe finally succumbed to his request and provided Lowery with her address so that they could meet to discuss issues related to Movement's business out of fear that Lowery, who had complete control of her financial destiny at Movement, would cause financial harm to her and her family.

58.

When Lowery arrived at Ms. Roe's home, they discussed issues related to Movement's business and how various aspects of Ms. Roe's employment with Movement could be handled going forward.

59.

In the midst of their discussions concerning Movement's business, suddenly, and without warning, Lowery pulled his penis out of his pants, forcibly grabbed Ms. Roe by the back of her head, and forced Ms. Roe to perform oral sex upon him.

60.

Ms. Roe did not consent to the performance of oral sex upon Lowery.

61.

Ms. Roe was shocked by Lowery's actions and did not immediately know what to do.

62.

Ultimately, Ms. Roe was able to extricate herself from Lowery's grasp and get away from him.

63.

Upon extricating herself from Lowery's grasp, Ms. Roe insisted that Lowery immediately leave her home.

64.

Lowery walked past Ms. Roe as if he were departing from Ms. Roe's home and, when he did, he grabbed Ms. Roe and pulled her onto the front porch of her house.

65.

Upon grabbing Ms. Roe, Lowery turned her around to where she was faced away from him and stated, "you're not going to leave me this way."

66.

At that point, while on the front porch of Ms. Roe's home, Lowery pulled down Ms. Roe's pajama bottoms and inserted his penis into her vagina without Ms. Roe's consent.

67.

In fact, Ms. Roe refused on numerous occasions, despite Lowery's insistence, to have sex with Lowery on the evening of September 20, 2022

68.

On September 21, 2022, Lowery contacted Ms. Roe by telephone.

69.

During the telephone conversation that Ms. Roe had with Lowery on September 21, 2022, she advised Lowery that there was a video camera on her front porch.

70.

Lowery demanded that Ms. Roe delete the video.

71.

During the September 21, 2022 telephone conversation, Lowery apologized to Ms. Roe for what he had done to her on the previous evening.

72.

During September of 2022, Lowery demanded that Ms. Roe delete the text messages that he previously sent to her.

73.

Because Ms. Roe was still in shock, and afraid of losing her job at Movement if she did not comply with Lowery's demand, she reluctantly complied and deleted the text messages that Lowery previously sent to her.

74.

Lowery's demand that Ms. Roe delete the video of the incident on the front porch of her home and the text messages that he previously sent her was a tacit admission by Lowery that those text messages were inappropriate, violated his contract with Movement, and violated Movement's *Employee Handbook*.

75.

In subsequent interactions with Lowery, he told Ms. Roe that he would "teach her how to make money" implying that, if she did not report her sexual battery and rape, he would assist Ms. Roe financially with respect to her employment at Movement.

76.

Ultimately, when Ms. Roe began to hear that Lowery had been sexually harassing other employees of Movement, she reported the incidents that had happened to her to Movement's human resources department.

77.

Despite the actual knowledge of various supervisory personnel at Movement that Lowery had been sexually harassing his co-workers and subordinates, it was only after Ms. Roe had

suffered the ultimate degradation and humiliation described hereinabove that Movement took any action against Lowery.

78.

Movement ultimately terminated Lowery's employment.

<b><u>FIRST CAUSE OF ACTION</u></b>

79.

28 U.S.C § 2201(a) provides:

> **In a case of actual controversy within its jurisdiction**, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, **any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.**

(emphasis added).

80.

On or about November 7, 2018, Ms. Roe executed an *Employee Arbitration Agreement* regarding various aspects of her employment with Movement.

81.

Section 3 of the *Employee Arbitration Agreement* provides, in pertinent part, that:

> The Parties agree that this Agreement shall be enforceable under and subject to the substantive and procedural provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1, et seq.

82.

Section 4 of the *Employee Arbitration Agreement* provides, in pertinent part, that the

"Claims" covered by the agreement:

> include, but are not limited to, all past, present, future claims,
> including any pending litigation, for: wrongful termination; breach
> of any contract or covenant, express or implied; breach of any duty
> owed to you by the Company or to the Company by you; disclosure
> of trade secrets or proprietary information, improper use of
> Company property or equipment; personal, physical or emotional
> injury; fraud, misrepresentation, defamation, or any other tort
> claims; wages or other compensation due; penalties; benefits;
> reimbursement of expenses; discrimination or harassment, including
> but not limited to discrimination or harassment based on race, sex,
> pregnancy, religion, national origin, ancestry, age, marital status,
> physical disability, mental disability, medical condition, genetic
> characteristics, gender expression, gender identity, or sexual
> orientation; retaliation; violation of any federal, state or other
> governmental constitution, statute, ordinance or regulation (as
> originally enacted and as amended), including but not limited to
> Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age
> Discrimination in Employment Act of 1967 ("ADEA"), the
> Americans With Disabilities Act ("ADA"), the Fair Labor Standards
> Act ("FLSA"), the Employee Retirement Income Security Act
> ("ERISA"), the Consolidated Omnibus Budget Reconciliation Act
> ("COBRA"), the Family and Medical Leave Act ("FMLA"), and
> any other federal or state antidiscrimination, leave, or wage and hour
> law, regulation or order.

83.

However, Section 4 of the *Employee Arbitration Agreement* also provides, in pertinent part,

that the term "'Claims' does not mean any dispute if arbitration of the dispute is prohibited by law"

from being arbitrated.

84.

Section 8 of the *Employee Arbitration Agreement* provides, in pertinent part, that:

> The arbitrator will apply the law of the State of North Carolina to
> any matter brought before him or her pursuant to this Agreement.

85.

Section 12 of the *Employee Arbitration Agreement* provides, in pertinent part, that:

> The terms of this Agreement shall be governed by, and construed in accordance with, the laws of the State of North Carolina.

86.

On February 10, 2022, Congress amended the *Federal Arbitration Act* when it passed the *Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021* ("the Act").

87.

On March 3, 2022, the President signed the Act into law.

88.

The Act added 9 U.S.C §402(a) to the *Federal Arbitration Act* to provide:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

89.

The *Employee Arbitration Agreement* executed by Ms. Roe on November 7, 2018 is a "predispute arbitration agreement" as that term is defined in 9 U.S.C. §401(1).

90.

The claims asserted by Ms. Roe in these proceedings are a "sexual assault dispute" as that term is defined in 9 U.S.C. §401(3).

91.

The claims asserted by Ms. Roe in these proceedings are a "sexual harassment dispute" as

that term is defined in 9 U.S.C. §401(4).

92.

The dispute and claims asserted by Ms. Roe in these proceedings arose and accrued after March 3, 2022.

93.

Pursuant to 9 U.S.C. §402(a), Section 4 of the *Employee Arbitration Agreement* executed by Ms. Roe on November 7, 2018 is neither valid nor enforceable by Defendants in these proceedings.

94.

Ms. Roe is entitled to a declaratory judgment, pursuant to 28 U.S.C § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure declaring that Section 4 of the *Employee Arbitration Agreement* executed by Ms. Roe on November 7, 2018 to be invalid and unenforceable with respect to the claims asserted against the Defendants in these proceedings.

95.

La. R.S. 23:921(A)(2) provides:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, **shall be null and void** except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

(emphasis added).

96.

On January 8, 2019, Ms. Roe executed a *Movement Mortgage Outside Loan Officer Employment Agreement* with Movement.

97.

Paragraph VIII of the *Movement Mortgage Outside Loan Officer Employment Agreement* provides:

**VIII.   CHOICE OF LAW AND FORUM/JURISDICTION**

In the event that any litigation needs to be brought to obtain temporary injunctive relief and/or enforce or challenge the Employee Arbitration Agreement, or should Employee opt out of the Employee Arbitration Agreement, the Parties agree that any litigation between the Parties may only be brought in federal district court in Mecklenburg County, North Carolina, or in the event subject-matter jurisdiction is lacking, in a State Court of competent jurisdiction located in Mecklenburg County, North Carolina. By execution of this Agreement, the Parties are consenting to personal jurisdiction in Mecklenburg County, North Carolina limited to matters concerning the employment relationship between them. The Parties agree that this Agreement will be interpreted in accordance with North Carolina law.

98.

The *Movement Mortgage Outside Loan Officer Employment Agreement* executed by Ms. Roe on January 8, 2019 and the *Employee Arbitration Agreement* executed by Ms. Roe executed by Ms. Roe on November 7, 2018 are collectively an "employment contract or agreement" as those terms are used in La. R.S. 23:921(A)(2).

99.

Movement is a "foreign employer" as that term is used in La. R.S. 23:921(A)(2).

100.

Paragraph VIII of the *Movement Mortgage Outside Loan Officer Employment Agreement*

and Section 8 and Section 12 of the *Employee Arbitration Agreement* contain "choice of forum" and "choice of law" provisions as those terms are used in La. R.S. 23:921(A)(2).

101.

The choice of forum and choice of law provisions contained in Paragraph VIII of the *Movement Mortgage Outside Loan Officer Employment Agreement* and Section 8 and Section 12 of the *Employee Arbitration Agreement* were not expressly, knowingly, and voluntarily agreed to and ratified by Ms. Roe after the occurrence of the incident which is the subject of these proceedings.

102.

Pursuant to La. R.S. 23:921(A)(2), the choice of forum and choice of law provisions contained in Paragraph VIII of the *Movement Mortgage Outside Loan Officer Employment Agreement* executed by Ms. Roe on January 8, 2019 and Section 8 and Section 12 of the *Employee Arbitration Agreement* executed by Ms. Roe on November 7, 2018 are null and void.

103.

Ms. Roe is entitled to a declaratory judgment, pursuant to 28 U.S.C § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure, declaring that Paragraph VIII of the *Movement Mortgage Outside Loan Officer Employment Agreement* executed by Ms. Roe on January 8, 2019 and Section 8 and Section 12 of the *Employee Arbitration Agreement* executed by Ms. Roe on November 7, 2018 to be null and void with respect to the claims asserted against the Defendants in these proceedings.

## SECOND CAUSE OF ACTION

104.

On September 20, 2022, Lowery intentionally inflicted force, violence, harmful, and

offensive contact upon Ms. Roe without her consent.

105.

Lowery's intentional infliction of force, violence, harmful, and offensive contact upon Ms. Roe without her consent on September 20, 2022 constituted a battery.

106.

Ms. Roe has suffered substantial damages as a direct and proximate result of Lowery's intentional infliction of force, violence, harmful, and offensive contact upon her without her consent on September 20, 2022.

107.

The damages suffered by Ms. Roe as a direct and proximate result of Lowery's intentional infliction of force, violence, harmful, and offensive contact upon Ms. Roe without her consent on September 20, 2022 include, but are not limited to:

   a.    Past, present, and future physical pain, and suffering;

   b.    Past, present, and future mental pain, suffering, and anguish;

   c.    Past, present, and future medical, psychiatric, and psychological treatment costs, and expenses;

   d.    Past, present, and future loss of income and earnings;

   e.    Past, present, and future inconvenience;

   f.    Past, present, and future loss of quality and enjoyment of life; and

   g.    All other forms of relief provided by law or equity.

108.

Lowery is liable to Ms. Roe pursuant to Louisiana Civil Code article 2315.

109.

At the time that Lowery battered Ms. Roe, he was acting within the course and scope of

his employment with Movement.

110.

Movement is responsible for Lowery's battery of Ms. Roe pursuant to Louisiana Civil Code article 2320 and the doctrine of *respondeat superior*.

111.

Lowery and Movement are liable jointly, severally, and *in solido* for the damages suffered by Ms. Roe.

112.

Ms. Roe is entitled to judgment against Lowery and Movement for such damages are reasonable in the premises for each of the following categories of damages:

a.     Past, present, and future physical pain, and suffering;

b.     Past, present, and future mental pain, suffering, and anguish;

c.     Past, present, and future medical, psychiatric, and psychological treatment costs, and expenses;

d.     Past, present, and future loss of income and earnings;

e.     Past, present, and future inconvenience;

f.     Past, present, and future loss of quality and enjoyment of life; and

g.     All other forms of relief provided by law or equity.

**THIRD CAUSE OF ACTION**

113.

Ms. Roe's injuries and damages were caused by Lowery's nonconsensual sexual contact with Ms. Roe in the workplace.

114.

In addition to general and special damages, Ms. Roe is entitled to an award of exemplary

damages as are reasonable in the premises against Lowery pursuant to Louisiana Civil Code article 2315.11.

## **FOURTH CAUSE OF ACTION**

115.

Alternatively, and only in the event that it is ultimately determined that Lowery was not acting within the course and scope of his employment with Movement when he battered Ms. Roe on September 20, 2023 (which is denied), Ms. Roe shows:

116.

The injuries suffered by Ms. Roe as a result of Lowery's intentional infliction of force, violence, harmful, and offensive contact upon Ms. Roe without her consent on September 20, 2022 were not caused by an "accident arising out of and in the course of [her] employment" with Movement.

117.

As a result, Ms. Roe's injuries and damages are not covered by the Louisiana Workers' Compensation Law. *See* La. R.S. 23:1020.1(B)(1); La. R.S. 23:1031(A).

118.

Because Ms. Roe's injuries and damages are not covered by the Louisiana Workers' Compensation Law, Ms. Roe is free to proceed against Movement in tort. *See* La. R.S. 23:1032; *Austin v. Abney Mills, Inc.*, 01-1598 (La. 09/04/2002), 824 So.2d 1137.

119.

Movement knew, or in the exercise of reasonable diligence should have known, that Lowery engaged in various acts during his employment prior to Movement that amounted to sexual harassment.

120.

However, because Lowery was bringing a substantial book of business from his previous employer, Movement either ignored, or failed to thoroughly and properly investigate Lowery's prior bad acts.

121.

Movement knew, or in the exercise of reasonable diligence should have known, that Lowery engaged in various acts during his employment with Movement that amounted to sexual harassment.

122.

However, because of the involvement of Movement in litigation with Lowery's prior employer, Movement either ignored, or failed to thoroughly and properly investigate Lowery's bad acts while employed at Movement.

123.

In addition, Movement failed to properly supervise Lowery while he was employed with it to ensure that he was complying with the requirements of his employment contract, applicable laws, and with Movement's own rules, procedures, and policies.

124.

Movement's failure to thoroughly and properly investigate Lowery's employment history and history of sexual harassment prior to hiring him, Movement's continued employment of Lowery after it became aware of his sexually harassing conduct, and Movement's failure to properly supervise Lowery in the discharge of his duties had the cumulative result of releasing a sexual predator among Movement's other employees, including Ms. Roe.

125.

The failures of Movement described in the preceding paragraphs were both reckless and negligent.

126.

Movement's reckless and negligent hiring, retention, and supervision of Lowery was a substantial contributing factor in Lowery having access to, authority over, and ultimately battering, Ms. Roe.

127.

Movement is liable to Ms. Roe for its reckless and negligent hiring, retention, and supervision of Lowery that resulted in the battery of Ms. Roe.

128.

As a direct and proximate consequence of Movement's reckless and negligent hiring, retention, and supervision of Lowery, Ms. Roe has suffered damages that include, but are not limited to:

a.    Past, present, and future physical pain, and suffering;

b.    Past, present, and future mental pain, suffering, and anguish;

c.    Past, present, and future medical, psychiatric, and psychological treatment costs, and expenses;

d.    Past, present, and future loss of income and earnings;

e.    Past, present, and future inconvenience;

f.    Past, present, and future loss of quality and enjoyment of life; and

g.    All other forms of relief provided by law or equity.

129.

Ms. Roe is entitled to judgment against Movement for such damages are reasonable in the

premises for each of the following categories of damages:

    a.      Past, present, and future physical pain, and suffering;

    b.      Past, present, and future mental pain, suffering, and anguish;

    c.      Past, present, and future medical, psychiatric, and psychological treatment costs, and expenses;

    d.      Past, present, and future loss of income and earnings;

    e.      Past, present, and future inconvenience;

    f.      Past, present, and future loss of quality and enjoyment of life; and

    g.      All other forms of relief provided by law or equity.

## **FIFTH CAUSE OF ACTION**

### 130.

On or about July 2, 2021, Lowery became employed by Movement and Movement entered into an employment agreement with Lowery.

### 131.

In that employment agreement, Movement required Lowery to agree to comply with all applicable laws and with Movement's rules, procedures, and policies.

### 132.

Movement's rules, procedures and policies **strictly prohibited** Lowery from engaging in sexual harassment, including unwelcome sexual advances, requests for sexual favors, and unwelcome physical contact.

### 133.

Movement's rules, procedures and policies specifically apply to supervisors, such as Lowery, "**at any time or location** while working or representing the Company *or* **while interacting with other Company employees**…." (emphasis added).

134.

On information and belief, Movement obligated itself to perform and actually undertook to perform the following duties and responsibilities:

a.    To ensure that rules, procedures, and policies were adopted, promulgated, and enforced as concerned the sexual harassment and sexual abuse of its employees "at any time or location" by other employees of Movement, including its supervisors;

b.    To ensure that Lowery did not consume excessive amounts of alcoholic beverages while performing services for Movement;

c.    To ensure that Lowery performed his duties in a manner that complied with his employment contract and with the rules, procedures and policies adopted by Movement;

d.    To ensure that Ms. Roe was not subjected to sexual harassment and sexual abuse "at any time or location" from another employee of Movement;

e.    To properly screen potential employees, such as Lowery, for prior instances of sexual harassment and/or sexual abuse prior to hiring them;

f.    To take immediate disciplinary action against current employees, such as Lowery, for engaging in sexual harassment and/or sexual abuse while employed by Movement;

g.    To provide adequate warnings and instructions where such were necessary in order to prevent Ms. Roe from being harmed by the sexual harassment and/or sexual abuse of her supervisors, including Lowery;

h.    To ensure that Ms. Roe and her co-workers were provided a safe working

environment and/or a safe place within which to work; and

i.      Such other duties and responsibilities as may be shown at the trial of this

matter.

135.

Movement actually undertook, on an operational basis, to perform the foregoing duties and

fulfill the foregoing responsibilities, however, Movement intentionally, recklessly, and negligently

failed to carry out those undertakings and assumed duties in the manner more particularly

described in the following paragraph.

136.

Movement intentionally, recklessly, and negligently failed in the performance of its actual

undertakings and assumed obligations in the following non-exclusive particulars:

a.      Failing to ensure that rules, procedures, and policies were adopted,

promulgated, and enforced as concerned the sexual harassment and sexual

abuse of its employees "at any time or location" by other employees of

Movement, including its supervisors;

b.      Failing to ensure that Lowery did not consume excessive amounts of

alcoholic beverages while performing services for Movement;

c.      Failing to ensure that Lowery performed his duties in a manner that

complied with his employment contract and with the rules, procedures and

policies adopted by Movement;

d.      Failing to ensure that Ms. Roe was not subjected to sexual harassment and

sexual abuse "at any time or location" from another employee of

Movement;

e.    Failing to properly screen potential employees, such as Lowery, for prior instances of sexual harassment and/or sexual abuse prior to hiring them;

f.    Failing to take immediate disciplinary action against current employees, such as Lowery, for engaging in sexual harassment and/or sexual abuse while employed by Movement;

g.    Failing to provide adequate warnings and instructions where such were necessary in order to prevent Ms. Roe from being harmed by the sexual harassment and/or sexual abuse of her supervisors, including Lowery;

h.    Failing to make ensure that Ms. Roe and her co-workers were provided a safe working environment and/or a safe place within which to work; and

i.    Failing at such other duties and responsibilities as may be shown at the trial of this matter.

137.

The intentional, reckless, and negligent acts of Movement outlined above were a substantial contributing factor in Ms. Roe being battered by Lowery.

138.

As a direct and proximate consequence of Movement's intentional, reckless, and negligent failure to perform its actual undertakings and assumed obligations, Ms. Roe has suffered damages that include, but are not limited to:

a.    Past, present, and future physical pain, and suffering;

b.    Past, present, and future mental pain, suffering, and anguish;

c.    Past, present, and future medical, psychiatric, and psychological treatment costs, and expenses;

d.    Past, present, and future loss of income and earnings;

e.      Past, present, and future inconvenience;

f.      Past, present, and future loss of quality and enjoyment of life; and

g.      All other forms of relief provided by law or equity.

139.

Ms. Roe is entitled to judgment against Movement for such damages are reasonable in the

premises for each of the following categories of damages:

a.      Past, present, and future physical pain, and suffering;

b.      Past, present, and future mental pain, suffering, and anguish;

c.      Past, present, and future medical, psychiatric, and psychological treatment costs, and expenses;

d.      Past, present, and future loss of income and earnings;

e.      Past, present, and future inconvenience;

f.      Past, present, and future loss of quality and enjoyment of life; and

g.      All other forms of relief provided by law or equity.

## SIXTH CAUSE OF ACTION

140.

At all times relevant hereto, Ms. Roe was an "employee" of Movement as that term is

defined in La. R.S. 23:302(1).

141.

At all times pertinent hereto, Movement was Ms. Roe's "employer" as that term is defined

in La. R.S. 23:302(2).

142.

At all times pertinent hereto, Movement employed twenty or more employees within the

State of Louisiana for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

143.

Ms. Roe's sex is female.

144.

Lowery's sex is male.

145.

Lowery's actions described hereinabove constituted *quid pro quo* sexual harassment with respect to Ms. Roe.

146.

Lowery's actions described hereinabove also created a sexually hostile working environment for Ms. Roe.

147.

Lowery's actions described hereinabove occurred on numerous occasions, culminating in the battery of Ms. Roe, and were so severe and pervasive that they altered the terms and conditions of Ms. Roe's employment.

148.

Despite Ms. Roe's reporting of the sexual harassment that she had endured at the hands of Lowery to Movement, Movement failed to exercise reasonable care to prevent Lowery's escalating sexually harassing behavior toward Ms. Roe ultimately culminating in Lowery battering her as described hereinabove.

149.

Despite Ms. Roe's reporting of the sexual harassment that she had endured at the hands of

Lowery to Movement, Movement failed to exercise reasonable care to correct promptly Lowery's escalating sexually harassing behavior toward Ms. Roe ultimately culminating in Lowery battering her as described hereinabove.

150.

The actions and inactions of Movement constitute intentional employment discrimination under La. R.S. 23:332(A).

151.

The actions and inactions of Movement are a direct and proximate cause of the damages sustained by Ms. Roe, which are described in the following Paragraph.

152.

Ms. Roe is entitled to recover such compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), back pay, benefits, front pay, reasonable attorney fees, and court costs from Movement in such amounts as are reasonable in the premises for its violation of La. R.S. 23:332(A).

## SEVENTH CAUSE OF ACTION

153.

ABC and DEF are children of Ms. Roe.

154.

ABC and DEF are minors.

155.

As a direct and proximate result of the delictual conduct of the Defendants as alleged hereinabove, ABC and DEF have lost the love, affection, society, support, services, and consortium of Ms. Roe.

156.

Ms. Roe is entitled to judgment against Movement on behalf of ABC and DEF for such damages are reasonable in the premises for their loss of the love, affection, society, support, services, and consortium of Ms. Roe.

## SATISFACTION OF REQUIREMENTS
## OF LA. R.S. 23:303(C)

157.

La. R.S. 23:303(C) provides:

> A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolve the dispute prior to initiating court action.

158.

In accordance with La. R.S. 23:303(C), by letter dated June 12, 2023, Ms. Roe gave Movement, through its General Counsel, written notice of the fact that she believed that she had been discriminated against and detailing that discrimination in a good faith effort to resolve the dispute prior to initiating court action.

159.

The foregoing letter was delivered to Movement's General Counsel by Federal Express on June 13, 2023.

160.

Despite the fact that La. R.S. 23:303(C) requires that "both parties shall make a good faith effort to resolve the dispute," neither Ms. Roe nor her undersigned counsel received any contact from Movement with respect to the discrimination perpetrated upon Ms. Roe.

161.

More than thirty (30) days have elapsed since the delivery of the foregoing letter to Movement.

162.

All conditions precedent to the commencement of this suit have occurred.

## CLAIMS AGAINST INSURER

163.

Westchester Fire Insurance Company issued policies of employment practices liability insurance to Movement that provide coverage for the causes of action asserted by Ms. Roe against Movement as detailed hereinabove. As such, Westchester Fire Insurance Company is liable to Ms. Roe for the damages alleged herein against Movement and that are detailed hereinabove, individually, jointly and *in solido.*

164.

Westchester Fire Insurance Company issued policies of employment practices liability insurance to Movement that provide coverage for the causes of action asserted by Ms. Roe against Lowery as detailed hereinabove. As such, Westchester Fire Insurance Company is liable to Ms. Roe for the damages alleged herein against Lowery and that are detailed hereinabove, individually, jointly and *in solido.*

## DEMAND FOR JURY TRIAL

165.

Plaintiff demands and is entitled to a trial by jury on all issues raised herein.

**WHEREFORE**, Plaintiff, Rebecca Roe, prays that after due proceedings are had that there be a judgment in her favor individually and:

I.     against Defendants, Johnathan Randall Lowery, also known as Johnathan R. Lowery, also known as Randy Lowery and Movement Mortgage, LLC:

    A.     declaring that Section 4 of the *Employee Arbitration Agreement* executed by Ms. Roe on November 7, 2018 to be invalid and unenforceable with respect to the claims asserted against the Defendants in these proceedings; and

    B.     declaring that Paragraph VIII of the *Movement Mortgage Outside Loan Officer Employment Agreement* executed by Ms. Roe on January 8, 2019 and Section 8 and Section 12 of the *Employee Arbitration Agreement* executed by Ms. Roe on November 7, 2018 to be null and void with respect to the claims asserted against the Defendants in these proceedings.

II.    against Defendants, Johnathan Randall Lowery, also known as Johnathan R. Lowery, also known as Randy Lowery, Movement Mortgage, LLC, and Westchester Fire Insurance Company jointly, severally, and *in solido* for such damages as are reasonable in the premises, together with interest thereon at the legal rate from the date of judicial demand until paid, for the battery suffered by Rebecca Roe, including:

    A.     Past, present, and future physical pain and suffering;

    B.     Past, present, and future mental pain, suffering, and anguish;

    C.     Past, present, and future medical, psychiatric, and psychological treatment costs and expenses;

    D.     Past, present, and future loss of income and earnings;

    E.     Past, present, and future inconvenience;

    F.     Past, present, and future loss of quality and enjoyment of life; and

    G.     All other forms of relief provided by law or equity.

III.   against Defendant, Johnathan Randall Lowery, also known as Johnathan R. Lowery, also known as Randy Lowery, for exemplary damages in such amount as is reasonable in the premises, together with interest thereon at the legal rate from the date of judicial demand until paid, pursuant to Louisiana Civil Code article 2315.11.

IV.    against Defendants, Movement Mortgage, LLC and Westchester Fire Insurance Company, for such damages as are reasonable in the premises,

together with interest thereon at the legal rate from the date of judicial demand until paid, for its negligent hiring, retention and supervision of Johnathan Randall Lowery, also known as Johnathan R. Lowery, also known as Randy Lowery, including:

    A.    Past, present, and future physical pain and suffering;

    B.    Past, present, and future mental pain, suffering, and anguish;

    C.    Past, present, and future medical, psychiatric, and psychological treatment costs and expenses;

    D.    Past, present, and future loss of income and earnings;

    E.    Past, present, and future inconvenience;

    F.    Past, present, and future loss of quality and enjoyment of life; and

    G.    All other forms of relief provided by law or equity.

V.    against Defendants, Movement Mortgage, LLC and Westchester Fire Insurance Company, for such damages as are reasonable in the premises, together with interest thereon at the legal rate from the date of judicial demand until paid, for breach of the duty it assumed to protect Ms. Roe from being battered by Johnathan Randall Lowery, also known as Johnathan R. Lowery, also known as Randy Lowery, including:

    A.    Past, present, and future physical pain and suffering;

    B.    Past, present, and future mental pain, suffering, and anguish;

    C.    Past, present, and future medical, psychiatric, and psychological treatment costs, and expenses;

    D.    Past, present, and future loss of income and earnings;

    E.    Past, present, and future inconvenience;

    F.    Past, present, and future loss of quality and enjoyment of life; and

    G.    All other forms of relief provided by law or equity.

VI.    against Defendants, Movement Mortgage, LLC, and Westchester Fire Insurance Company, for such damages as are reasonable in the premises,

together with interest thereon at the legal rate from the date of judicial demand until paid, for its violation of the *Louisiana Employment Discrimination Law*, including:

A.  Compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

B.  Back pay;

C.  Benefits;

D.  Front pay;

E.  Reasonable attorney fees; and

F.  Court costs.

VII.  against Defendants, Johnathan Randall Lowery, also known as Johnathan R. Lowery, also known as Randy Lowery, Movement Mortgage, LLC, and Westchester Fire Insurance Company jointly, severally, and *in solido* for all costs of these proceedings.

Plaintiff, Rebecca Roe, further prays that after due proceedings are had that there be a judgment in her favor, on behalf of her minor child, ABC, and against Defendants, Johnathan Randall Lowery, also known as Johnathan R. Lowery, also known as Randy Lowery, Movement Mortgage, LLC, and Westchester Fire Insurance Company jointly, severally, and *in solido* for damages, and costs of court in such amount as is reasonable in the premises for the loss of loss of consortium, service, and society suffered by ABC.

Plaintiff, Rebecca Roe, further prays that after due proceedings are had that there be a judgment in her favor, on behalf of her minor child, DEF, and against Defendants, Johnathan Randall Lowery, also known as Johnathan R. Lowery, also known as Randy Lowery, Movement Mortgage, LLC, and Westchester Fire Insurance Company jointly, severally, and *in solido* for damages, and costs of court in such amount as is reasonable in the premises for the loss of loss of consortium, service, and society suffered by DEF.

Plaintiff further prays for all other legal and/or equitable relief to which she may be entitled in the premises."

Respectfully submitted:

*James R. Bullman*

_____

James R. Bullman (35064)
Brian F. Blackwell (18119)
Grant T. Herrin (35169)
**BLACKWELL & BULLMAN, LLC**
8322 One Calais Avenue
Baton Rouge, Louisiana 70809
Telephone:    (225) 769-2462
Telecopier:    (225) 769-2463
E-mail:        brian@blackwell-bullman.com
Email:         james@blackwell-bullman.com
               grant@blackwell-bullman.com

            -and-

Michael Ellington
**ELLINGTON LAW LLC**
6658 Kinloch Street
Winnsboro, LA 71295
Telephone:    (318) 367-0799
E-mail:        ellingtonlawllc@gmail.com

            -and-

Eric Micah Hoggatt
**HOGGATT LAW, LLC**
6658 Kinloch Street
Winnsboro, LA 71295
Telephone:    (318) 367-5252
Telecopier:    (318) 367-5292
E-mail:        micah@hoggattlawllc.com

***Attorneys for Rebecca Roe individually, and on behalf of her minor children, ABC and DEF***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading was filed electronically using the CM/ECF system. Notice of this filing will be forwarded to all known counsel by operation of the Court's electronic filing system.

Baton Rouge, Louisiana this 1st day of May, 2024.

*James R. Bullman*

_____
James R. Bullman