UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **CHELSEA BELCHER** | **CASE NO. 3:23-CV-01279** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JOHNATHAN RANDALL LOWERY ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## MEMORANDUM RULING

Pending before the Court is a Motion for Partial Summary Judgment [Doc. No. 145] filed by Defendant, Johnathan Lowery ("Lowery"), regarding applicability of Louisiana Civil Code's Article 2315.11. Plaintiff, Chelsea Belcher ("Belcher"), opposes the Motion [Doc. No. 166].

For the reasons stated below, Lowery's Motion is **GRANTED**.

### I.   Background

Beginning in November 2018, Belcher worked for Movement Mortgage, LLC ("Movement"), as an Outside Loan Officer.[1] Lowery joined Movement as a Market Leader for the Southeast Region in June 2021.[2] In this role, Lowery met with and supervised loan officers in the Southeast region, such as Belcher.[3]

Relevant to this case, Movement hosted an event in Monroe, Louisiana, on September 20, 2023.[4] Both Belcher and Lowery attended this event, where alcohol

---

[1] [Doc. No. 163, at ¶ 21].
[2] [Id. at ¶ 33].
[3] [Id. at ¶¶ 35h–35i].
[4] [Id. at ¶ 51].

was served.[5] After the event, Lowery texted and called Belcher, seeking to go to Belcher's house.[6] Although she initially declined, Belcher eventually provided Lowery with her home address.[7] At Belcher's house, Lowery allegedly overpowered Belcher and sexually assaulted her (the "Incident").[8] Belcher reported the Incident to Movement's human resources department after hearing other employees mention that Lowery had sexually harassed them.[9]

Belcher sued Lowery and Movement in the Third Judicial District Court in Lincoln Parish, Louisiana.[10] Movement removed the case to this Court, citing diversity jurisdiction.[11] Belcher then added Westchester Fire Insurance Company, Movement's insurer, as a defendant.[12]

The issue in this Motion is whether the Louisiana provision authorizing punitive damages for workplace sexual assault ("Article 2315.11") applies. The parties have briefed all relevant issues, and the matter is ripe for ruling.

## II. Law and Analysis

### A. Standard of Review

A court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If the movant meets their initial burden of

---

[5] [Id. at ¶¶ 49–50, 52].
[6] [Id. at ¶ 55].
[7] [Id. at ¶¶ 56–57].
[8] [Id. at ¶¶ 59–67].
[9] [Id. at ¶ 76].
[10] [Doc. No. 1-1, at pp. 2–3].
[11] [Doc. No. 1].
[12] [Doc. No. 163, at ¶¶ 2c, 163–64].

showing no genuine issue of material fact, "the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (citation modified). A fact is "material" when proof of its existence or nonexistence would affect the lawsuit's outcome under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgement." *Id.* at 247–48. And a dispute about a material fact is "genuine" only if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). But summary judgment is appropriate when the evidence is "merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249 (1986) (citation modified).

Moreover, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation modified). Courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted).

Finally—and importantly—there can be no genuine dispute as to a material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Since the Court is sitting in diversity jurisdiction, the forum state, i.e., Louisiana's substantive law applies. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Ordinarily, this Court applies Louisiana courts' statutory constructions without a tee. If, however, the state courts have yet to construe a state statute, federal courts must make an "*Erie* guess." *Breaux v. Worrell*, 141 F.4th 712, 716 (5th Cir. 2025). In a civil law jurisdiction, like Louisiana, federal courts making *Erie* guesses must "examine primary sources of law: the constitution, codes, and statutes" and not rely on "jurisprudence, which is merely a secondary law source." *Id.* (cleaned up). Furthermore, unlike state courts, this Court may not make policy determinations and must limit its role to "say[ing] what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

The Louisiana Civil Code provides rules for interpreting its provisions. If the law is clear and unambiguous, and its application does not lead to absurd results, the law is applied as written. LA. CIV. CODE ANN. art. 9 (2025). If, however, the law has different meanings, the interpreter must apply the meaning that best meets the purpose of the law. *Id.* art. 10. Words of a law are given their generally prevailing meaning, unless it is a term of art. *Id.* art. 11. And if the words of a law are ambiguous, courts must use context to determine the word's meaning. *Id.* art. 12.

### B. Applicability of Article 2315.11

Article 2315.11 states that:

> In addition to general and special damages, exemplary damages may be awarded upon proof that the injuries on which the action is based were caused by an act or acts of sexual assault *in the workplace.*

LA. CIV. CODE ANN. art. 2315.11(A) (2025) (emphasis added).

Lowery argues this law is inapplicable in this case because here, the Incident took place at Belcher's residence, which is not a workplace.[13] In support, Lowery argues (1) Belcher's employment contract prohibited her from "establishing a home office or conducting business from home"[14] and (2) the law should be narrowly construed, consistent with Louisiana's policy against punitive damages.[15]

Belcher counters that the Incident occurred in a workplace. Specifically, Belcher contends that (1) Lowery's employment contract-based arguments are impermissible and misconstrue the contract,[16] (2) the Court should broadly read Article 2315.11, consistent with Louisiana's approach of broadly construing remedial statutes,[17] and (3) Lowery's work-related actions make Belcher's house a workplace.[18]

When interpreting statutes or code articles, this Court starts and ends with the law's text. "In determining the common and approved usage of an undefined word, dictionaries are a valuable source." *Hopkins v. Howard,* 930 So. 2d 999, 1005 (La. Ct. App. 2006), *writ denied,* 930 So. 2d 984 (La. 2006) (cleaned up). Black's Law

---

[13] [Doc. No. 145-3, at pp. 4–8].
[14] [Id. at p. 4].
[15] [Id. at p. 6].
[16] [Doc. No. 166, at pp. 8–12].
[17] [Id. at pp. 3–4].
[18] [Id. at pp. 13–14].

Dictionary defines workplace as a "person's place of employment or work setting in general." WORKPLACE, Black's Law Dictionary (12th ed. 2024). The Oxford English Dictionary says more or less the same: "the site or location where a person works"; "the premises of a company, business, etc., such as an office, factory, or shop, at which its employees work"; "the setting or environment particular to such places." WORKPLACE, Oxford English Dictionary (Rev. 2014).

The environment at Belcher's house the night of the Incident, under the above definitions, was not a workplace. Belcher and Lowery were drinking wine,[19] on Belcher's couch,[20] at around 10:00 p.m.,[21] while Belcher was wearing her pajamas.[22] Even in today's laidback, post-Covid world, the environment and setting at Belcher's is not a workplace. The mere fact that Lowery used a business talk to coax Belcher into providing her address and they engaged in some business talk at first[23] does not overcome the remaining, above-cited facts.

The above analysis is sufficient to dispose this Motion but given the unique circumstances, the Court finds it appropriate to address the parties' other arguments.

*First*, the Court agrees with Belcher about Lowery's improper use of Belcher's employment contract in interpreting Article 2315.11. Lowery misconstrues the contract, as Belcher points out, because the contract does not prohibit all use of Belcher's home for business, but only prohibits her from "regularly" working or

---

[19] [Doc. No. 145-6, at p. 15].
[20] [Id.].
[21] [Id. at p. 14].
[22] [Id.].
[23] [Doc. No. 166-1, at p. 10–11]; [Doc. No. 145-6, at pp. 15–16].

Page **6** of **8**

conducting "[c]ompany business at [her] home."[24] Belcher and Lowery's encounter at Belcher's house on the night of the Incident was a one-time event that cannot be deemed "regular" or repetitive under Belcher's employment contract. Furthermore, as Belcher argues, Lowery cannot use the employment contract to "evade or nullify" Belcher's statutory protections. "While it is true that persons may waive personal rights that the law has established, they cannot by their contracts violate prohibitory law or derogate from law enacted for the protection of the public interest." *Goulas v. B & B Oilfield Servs., Inc.*, 69 So. 3d 750, 760 (La. Ct. App. 2011), *writ denied,* 75 So. 3d 945 (La. 2011) (citing LA. CIV. CODE ANN. art. 7 (2025)).

*Second*, the Court agrees with Lowery that the law must be strictly construed. Belcher points out that the Louisiana Supreme Court requires reading remedial laws broadly to effectuate the legislature's goal of redressing wrongs. *See Lejeune v. Rayne Branch Hosp.*, 556 So. 2d 559, 566 (La. 1990). That is true. But like all legal maxims, that general rule has an exception—"when a statute does authorize the imposition of [punitive damages], it is to be strictly construed." *Fisk Elec. Co. v. Woodrow Wilson Const. Co.*, 816 F.3d 311, 314 (5th Cir. 2016) (quoting *Int'l Harvester Credit Corp. v. Seale,* 518 So. 2d 1039, 1041 (La. 1988)).

Thus, while Lowery's arguments based on Belcher's employment contract are incorrect, the specific facts of the night of the Incident and Louisiana's policy of strictly construing punitive damages provisions favor Lowery. Accordingly, the Court concludes Belcher's alleged assault did not take place in a workplace.

---

[24] [Doc. No. 145-4, at p. 1].

### III. Conclusion

For the reasons stated above,

**IT IS ORDERED, ADJUDGED, AND DECREED** that Lowery's Motion for Partial Summary Judgment [Doc. No. 145] is **GRANTED** and Belcher's claims against Lowery, based on Article 2315.11, are **DISMISSED WITH PREJUDICE**.

MONROE, LOUISIANA, this 4th day of November 2025.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE